UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MANSFIELD DINKINS, III,

                    Plaintiff,

                                                    Case number 05-70582

v.

                                                    Honorable Julian Abele Cook, Jr.

JENKINS CONSTRUCTION, INC.,

                    Defendant.

_____

ORDER

      Before the Court is a motion by the Defendant, Jenkins Construction, Inc ("Jenkins Construction") to set aside the entry of a default and default judgment in this case. On October 27, 2006, Magistrate Judge Donald Scheer, to whom this motion had been submitted for his evaluation, submitted a report in which he recommended that the Court deny this motion. Timely objections to this report by Jenkins Construction followed.

      For the reasons that have been stated below, the Court will adopt the recommendations within Magistrate Judge Scheer's report and deny this petition for relief by Jenkins Construction.

I.

      Jenkins Construction was a general contractor for now former co-Defendant, Hunt Construction Group, Inc. ("Hunt Construction") and a construction manager for the owner of the Ford Field stadium project in Detroit, Michigan.

      On February 14, 2005, the Plaintiff, Mansfield Dinkins, filed a complaint against Jenkins Construction and Hunt Construction, alleging that both of these companies had subjected him to

unlawful acts of employment discrimination in violation of the Americans with Disabilities Act. Subsequent to its receipt of this complaint, Jenkins Construction failed or neglected to respond to Dinkins' complaint, or undertake any appropriate action with which to defend itself. On June 7, 2005, a clerk's entry of default was entered against Jenkins Construction.

On July 27, 2005, Dinkins petitioned the Court for entry of a default judgment, which was denied on grounds asserted by Hunt Construction.[1] On May 22, 2006 – approximately fourteen months after the filing of the complaint – the Court granted Dinkins' second motion for default judgment, and thereafter entered a judgment in the amount of four hundred and fifty thousand ($450,000) dollars in favor of Dinkins and against Jenkins Construction. A copy of the default judgment was served upon Jenkins Construction by certified mail.

On August 11, 2006, after Dinkins had issued a non-periodic writ of garnishment to garnishee LaSalle Bank Midwest, counsel for Jenkins Construction finally appeared in this action and filed an objection to the writ. On September 7, 2006, Jenkins Construction filed the motion at issue to set aside the default judgment.

II.

Rule 55© of the Fed.R.Civ.P. permits a court to set aside an entry of default "for good cause." However, a stricter standard applies for setting aside a default once it has ripened into a judgment. Once the court has determined damages and entered judgment, the court must examine the judgment in accordance with Fed. R.Civ. P. Rule 60(b). In addition, the discretion to vacate its order pursuant to Fed.R.Civ.P. Rule 60(b) is circumscribed by public policy favoring finality of

---

[1] Hunt and Dinkins filed a joint stipulation that resulted in an order from the Court dismissing Hunt from this lawsuit on December 27, 2005.

2

judgments and termination of litigation. *Waifersong, Ltd. Inc., v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992). The Sixth Circuit discussed the different standards used to determine whether to set aside a default as compared to a default judgement, stating, in pertinent part, that:

> While the standards for granting relief differ, the factors to be considered by the court are said to be similar and include:
> (1) Whether culpable conduct of the defendant led to the default,
> (2) Whether the defendant has a meritorious defense, and
> (3) Whether the plaintiff will be prejudiced.
>
> But when it is a judgment the defendant is seeking to avoid, the specific requirements of Rule 60(b) narrow the scope of the court's equitable inquiry. When relief is sought under Rule 60(b)(1), the culpability factor is framed in terms of "mistake, inadvertence, surprise, or excusable neglect." Furthermore, while it may be argued that the three factors are to be "balanced" by the court in determining whether to set aside an entry of default, balancing is demonstrably inappropriate when a court initially proceeds, as in the instant case, under Rule 60(b)(1). That is because the rule mandates that a defendant cannot be relieved of a default judgment unless he can demonstrate this default was the product of mistake, inadvertence, surprise, or excusable neglect. It is only when the defendant can carry this burden that he will be permitted to demonstrate that he also can satisfy the other two factors; the existence of a meritorious defense and the absence of substantial prejudice to the plaintiff should relief be granted.

*Id.* Thus, in order to appeal of entry of a default judgment, a defendant must first establish that the default was the product of "mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b). The defendant must meet this burden before the Court will consider the existence of a meritorious defense and lack of prejudice to the plaintiff.

III.

Magistrate Judge Scheer's Report and Recommendation concluded that the Defendant, Jenkins, was unable to demonstrate that the default judgment was the product of "mistake, inadvertence, surprise, or excusable neglect" pursuant to Fed.R.Civ.P 60(b). In his timely filed objection to the Magistrate's Report and Recommendation, Jenkins insists that the default was the result of his mistaken belief that "counsel for [then co-Defendant] Hunt also was defending Jenkins.

3

Jenkins had a good faith belief that it was being represented by attorneys hired by Hunt Construction." (Def.'s Obj. at p. 2.) Jenkins argues that the Court should find this alleged mistake sufficient to set aside entry of the default judgment.

James B. Jenkins, the owner of Jenkins Construction, asserted the following in an affidavit dated September 6, 2006:

> That based on conversations between my company and that of Hunt Construction and because of the joint venture, I believed that Jenkins Construction was being represented by the same attorneys that represented Hunt Construction.
> That when I believed that when Hunt Construction obtained a dismissal of the Plaintiff's case, the case was dismissed with regard to Jenkins Construction as well.

(Def.'s Mot. to Set Aside, Exhibit 12.)

However, Jenkins' claim, when considered with the other facts in this case, is simply not plausible. The findings of fact issued by Magistrate Scheer[2] establish that on or about May 1, 2000, Jenkins entered into an Associate Agreement with Hunt, and in this agreement, Jenkins agreed to "defend, indemnify and hold harmless" Hunt "against any and all claims arising directly or indirectly out of their association in connection with the construction of the Detroit Lion's stadium." (Pl.'s Response, Exhibit G.) On June 21, 2002, Dinkins filed a complaint with the EEOC against Jenkins and Hunt, alleging employment discrimination.(Pl.'s Response, Exhibit I.) The management of Jenkins was aware of the EEOC complaint and provided answers to interrogatories in connection with it. (Pl.'s Response, Exhibit B.) Hunt responded to Dinkins' EEOC complaint on behalf of itself but not on behalf of Jenkins. In its response, Hunt asserted that any liability to Dinkins must lie with Jenkins. (Pl.'s Response, Exhibit I.) James Jenkins was a copy recipient of

---

[2]Magistrate Sheer's Report and Recommendation includes a section entitled "Findings of Fact" that sets forth twenty-eight facts. In his objection to the Magistrate's report, Jenkins did not challenge any of these factual findings.

4

Hunt's response to the EEOC complaint. (Pl.'s Response, Exhibit H.)

After receiving notice of a "right to sue" from the EEOC, Dinkins brought the immediate lawsuit, based upon the subject matter of his EEOC complaint. Jenkins was served with a copy of the complaint on February 23, 2005. On March 29, 2005, counsel for Hunt provided James B. Jenkins with another copy of the summons and complaint and he advised Jenkins of its obligation to defend Hunt. (Pl.'s Hearing Ex. #1.)

On January 25, 2006, counsel for Hunt sent another letter to Jenkins, this time advising it of an December 27 Order of Dismissal that codified a stipulation between Hunt and Dinkins dismissing Hunt from the lawsuit. (Pl.'s Hearing Ex. #2.) In the letter, counsel for Hunt also noted Jenkins' failure to appear on its own behalf in this action and demanded payment of the attorney fees and costs incurred by Hunt in defending this action after Jenkins refused to do so.

After Dinkins Second Motion for Default Judgment was granted, a copy of the judgment order was sent to Jenkins on May 23, 2006. (Plaintiff's Response, Exhibit F.) On July 10, 2006, Dinkins served a subpoena on Jenkins, directing a representative to appear for a creditor's exam on July 13 that was subsequently rescheduled for July 31, 2006. After Jenkins failed to appear for the exam, Dinkins issued a second subpoena. On August 4, Dinkins issued a writ of garnishment to LaSalle Bank. Finally, on August 11, 2006, counsel for Jenkins filed an appearance in this action.

Jenkins either was or should have been well aware of its obligation to undertake the defense of this lawsuit. Jenkins had actual knowledge of the Dinkins EEOC complaint, as demonstrated by his responses to the interrogatories. He also received a copy of Hunt's response to the EEOC complaint, which outlined Hunt's position that any claim by Dinkins should lie with Jenkins. In regard to the lawsuit at issue, Jenkins does not contest service. In addition, Jenkins received two

5

letters from Hunt's counsel that made it clear that Hunt was not defending Jenkins.

Similarly, Jenkins does not contest that service of the default judgment was provided to it, yet it did not respond to the notice of the judgement, or to any pleadings in this case, until a writ of garnishment was issued in August 2006. Although Jenkins argues that its actions were the result of mistake, the facts in this case tell another story. Indeed, Jenkins conduct – ignoring this lawsuit until the proceedings threatened its bank account – amounts to a wilful disregard of the proceedings pending in this Court.

IV.

Jenkins also challenges Magistrate Scheer's conclusion that the amount of the default judgment – $450,000 – must stand. The Magistrate stated that while he was "uncomfortable with the size of the damage award," that relief under Fed.R.Civ.P. 60 is inappropriate at this point. Rule 60(b) is intended to provide relief to a party in only two instances: (1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order. *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000). In this case, Jenkins only plea for relief is based on his own mistake, and the Court is unable to relieve him from the amount of the default judgement.

V.

Hence, and for the reasons that have been stated above, the Court will, and does, (1) adopt the recommendation of the magistrate judge, and (2) deny Jenkins' motion to set aside default and default judgment.

6

IT IS SO ORDERED.


Dated: <u>March 15, 2007</u>                    <u>s/ Julian Abele Cook, Jr.</u>
       Detroit, Michigan                    JULIAN ABELE COOK, JR.
                                            United States District Court Judge




<u>Certificate of Service</u>

I hereby certify that on March 15, 2007,  I electronically filed the foregoing with the Clerk of the
Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                            <u>s/ Kay Alford</u>
                                            Courtroom Deputy Clerk